UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| BARBOURVILLE DIAGNOSTIC IMAGING CENTER, | ) ) ) | |
| | ) | Civil No. 12-191-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| PHILIPS MEDICAL SYSTEMS, INC., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Barbourville Diagnostic Imaging Center purchased a magnetic resonance imaging scanner from Philips Medical Systems, Inc., in August of 2001. Seven years later, the scanner began malfunctioning, rendering incorrect diagnostic images because of a defective part. After dealing with the malfunctioning MRI equipment for roughly two years, Barbourville Diagnostic decided to file suit against Philips Medical. The suit was initially filed in Knox County Circuit Court, but it was removed to this Court. Now, Philips Medical seeks dismissal of this action and an Order denying Barbourville Diagnostic an opportunity to amend its Complaint. After review of the pertinent filings, the Court finds that permitting Barbourville Diagnostic to amend its Complaint is appropriate, but that its negligence claims are premised on contractual agreements and therefore, cannot survive Philips Medical's motion to dismiss.

**I**

After removing this matter, Philips Medical filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [R. 4.] On September 21, 2012, Barbourville Diagnostic responded by filing a Motion for Leave to File Amended Complaint [R. 5] and objected to dismissal.

Less than a month later, Philips Medical replied to the Motion for Leave to File Amended Complaint arguing that it was procedurally defective and that amending the Complaint would be futile.  Rather than directly address Philips Medical's arguments, Barbourville Diagnostic filed an Amended Motion for Leave to File Amended Complaint [R. 10] hoping to correct any procedural flaws within its previous motion to amend.

## II

## A

With respect to the Motion to Amend, "Rule 15(a)(1)(B) states that a party may amend its pleading once as a matter of course 'if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." *Mills v. Caruso*, 2010 WL 1254576, *3 (W.D. Mich. Mar. 26, 2010) (quoting Fed. R. Civ. P.15(a)(1)(B)).

Barbourville Diagnostic attempts to avail itself of Rule 15(a)(1)(B) by submitting its Motion for Leave to File Amended Complaint [R. 5].  Philips Medical objects to the granting of this motion by arguing that it is procedurally deficient.  [R. 9.]  Specifically, Philips Medical asserts that Barbourville Diagnostic failed to file a memorandum in support of its motion, that the party referenced in the motion requesting the relief is not a party to this litigation, and that the rule relied on by Barbourville Diagnostics as justification for its request does not exist within the Federal Rules of Civil Procedure.  [R. 9, at 1, 2.]

It does appear that there are some defects in the filing.  Local Rule 7.1 provides that, with the exception of routine motions, "such as motions for extension of time – each motion must be accompanied by a supporting memorandum.  Failure to file a supporting memorandum may be grounds for denying the motion."  LR 7.1.  Additionally, a review of the record establishes that

2

James Douglas is not a party to this litigation. Finally, Barbourville Diagnostic filed its motion pursuant to "CR 15.01," but "CR 15.01" is a Kentucky Rule of Civil Procedure and thus has no bearing on this Court.

Nevertheless, these failures are not fatal to the request to amend the Complaint. LR 7.1 does not require immediate denial of the motion. Rather, a plain reading of the rule shows that the failure only establishes that it "may be grounds for denying the motion." *Id.* Furthermore, it is clear from the filings that the insertion of "James Douglas" as the Plaintiff in the motion to amend instead of Barbourville Diagnostics was simply a typographical error. Both errors were corrected in the subsequently filed Amended Motion for Leave to File Amended Complaint. [R. 10.]

Despite having corrected those two errors, Barbourville Diagnostic still cites to "CR 15.01," in the Amended Motion. Nonetheless, review of CR 15.01, along with the styling of the motion, makes clear that Barbourville Diagnostic intended to amend its Complaint. Although Barbourville Diagnostics drafting leaves much to be desired, in this instance the Court can easily detect mistakes that have been made inadvertently and is unwilling to place form over substance. *Neogen Corp. v. United States Dept. of Justice*, 2006 WL 3422691, *2 n. 3 (E.D. Ky. Nov. 28, 2006) ("[p]laintiff also argues that the defendants' motion to substitute should be denied for failure to comply with Local Rule ("LR") 7.1(a)," but as explained by this Court "[d]enying a motion to substitute in this situation would unnecessarily place form over substance, and the court thus rejects the plaintiff's invitation to do so.").

After determining that Philips Medical's arguments against amending the Complaint have no merit, the only remaining issue is whether Barbourville Diagnostic filed its motion to amend within the 21 days "after service of a responsive pleading or 21 days after service of a motion

under Rule 12(b), (e), or (f), whichever is earlier" as required to amend as a matter of course. Fed.R.Civ.P. 15(a)(1)(B). Philips Medical has not filed a responsive pleading. Thus the 21-day window must be measured from the filing of its 12(b)(6) Motion to Dismiss. That motion was submitted to the Court on September 14, 2012. [R. 4.] Based on that date, Barbourville Diagnostic had until October 5, 2012 to file its motion to amend. It filed its motion to amend on September 21, 2012, well within the time it was allotted. Therefore, granting Barbourville Diagnostics' request to amend its Complaint is proper.

## B

Although Barbourville Diagnostic has properly filed its Amended Complaint, whether it survives a 12(b)(6) motion to dismiss is an altogether different matter. In the 12(b)(6) motion to dismiss context, the party who submitted the motion has the burden of showing that the opposing party has failed to present a claim. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). While reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of" that party. *Id.* (citation omitted). Such a motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). Moreover, the facts that are pled must rise to the level of plausibility, not just possibility: "facts that are merely consistent with . . . liability stop[] short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the

4

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); s*ee also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009)

Notably, Philips Medical's arguments are all premised on the Complaint in which the only claims alleged by Barbourville Diagnostic were claims for negligence and a request for declaratory judgment with respect to the damages it could recover.  [R. 1-1.]  In the Amended Complaint, Barbourville Diagnostic asserts claims based on both Breach of Contract and Negligence theories.  [R. 10-1.]  Because this Court has permitted the amended pleading, consideration of Philip Medical's arguments will be evaluated against the Amended Complaint.

First, Philips Medical asserts that the allegations in the Complaint are conclusory and consequently should be dismissed.  [R. 4-1, at 2.]  Next, it argues that the Complaint does not plead a claim for relief that is plausible on its face.  [*Id.*]  Third, it contends that Barbourville Diagnostic's negligence claims fail to state a cause of action as a matter of law because it has failed to allege the existence of an independent legal duty.  [*Id.*]  Finally, Philips Medical explains that the request for declaratory judgment fails to state a cause of action as a matter of law because the plaintiff has not alleged the existence of an actual controversy.  [*Id.*]

Conversely, Barbourville Diagnostic argues that all that is necessary for its claims to survive this motion is "a short and plain statement of the claim showing that the pleader is entitled to relief" pursuant to 8(a)(2) of Federal Rule of Civil Procedure.  [R. 6, at 2.]  It asserts that it "pled facts sufficient to support a plausible claim," that Philips Medical failed to exercise ordinary care in the repair and maintenance of the MRI scanner.  [*Id.* at 5.]  Further, it contends that "[t]he Complaint clearly set forth that Defendant did not properly maintain and repair [its] MRI equipment either (a) because its personnel were negligent or (b) because the company sent

5

improperly selected, trained or supervised personnel to work on Plaintiff's equipment."  [*Id.*]
Barbourville Diagnostic concludes by arguing that Philips Medical has had fair and adequate
notice of the allegations against it and thus dismissing its claims is improper.

      In contrast with the Complaint, missing from the Amended Complaint is any reference or
request for declaratory judgment.  Because Barbourville Diagnostic has decided not to include
that claim in its Amended Complaint it has essentially abandoned that claim and thus review of it
is unnecessary.  *See Coyer v. HSBC Mortg. Services, Inc.*, 701 F.3d 1104, 1107 (6th Cir. 2012)
("[t]he Coyers present no arguments on appeal challenging the district court's dismissal of their
claim for intentional infliction of emotional distress.   Therefore, they have abandoned this claim
and we will not review it."); *Ginwright v. Dayton Bd. of Educ.*, 2010 WL 1741331, *1 (S.D.
Ohio April 29, 2010) ("[t]he Court reads the Amended Complaint as abandoning any claims
against Mr. Concannon, a reading confirmed at oral argument, and any such claims are ordered
dismissed with prejudice."); *Laine Craig Shore v. John E. Potter*, 2005 WL 1123738, *3 n. 2
(W.D. Mich. May 11, 2005) ("[a]lthough plaintiff has abandoned most of the claims appearing in
his first amended complaint, facts related to plaintiff's abandoned claims provide context for
plaintiff's remaining claims.").  Consequently, this analysis will focus on the Breach of Contract
and Negligence claims asserted in the Amended Complaint.[1]

---

[1] There is a separate "General Claim" asserted in the Amended Complaint.  Barbourville Diagnostic states that it
"hereby generally asserts any other legal theory of recovery that would justify an award of damages to the Plaintiff
based on the actions of Defendant and facts as set forth above."  [R. 5-1, at 4.]  This claim must be dismissed
because plaintiffs are not permitted to file claims that do not identify a legal theory.  *Harris v. Jan*, *2 (N.D. Ohio
Dec. 15, 2005) ("plaintiff's failure to identify a particular legal theory in his complaint places an unfair burden on
the defendants to speculate on the potential claims that plaintiff may be raising against them and the defenses they
might assert in response to each of these possible causes of action." (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th
Cir. 1989)).

**1**

Barbourville Diagnostic alleges that several contracts were entered into between June of 2008 and July 2010.  To be precise, it asserts that Philips Medical "orally contracted with [Barbourville Diagnostic] on several occasions to repair and maintain" the MRI scanner, and entered into two written contracts to repair and maintain it.  [R. 5-1, at 2.]  Barbourville Diagnostic also contracted with Philips Medical to have it "supply, install and/or update and/or replace appropriate software for use" with the MRI scanner.  [*Id.* at 3.]

A claim for breach of an express contract, written or oral, requires that the plaintiff show (1) that a contract existed; (2) that it was breached; and (3) damages resulting from the breach of that contract.  *Metro Louisville/Jefferson County Government v. Abma*, 326 S.W.3d 1, 8 (Ky.App. 2009); *Barnett v. Mercy Health Partners–Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky.App. 2007); *see also Texas Capital Bank, N.A. v. First American Title Ins. Co.*, 822 F.Supp.2d 678, 683 (W.D. Ky. 2011) .  Furthermore, "[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached."  *Stevens v. Allstate Corp.*, 2013 WL 243641, *2 (E.D. Ky. Jan. 21, 2013); *Harris v. American Postal Workers Union,* 198 F.3d 245 (table), 1999 WL 993882, at *4 (6th Cir. 1999).  If a plaintiff fails to attach the alleged contract to the complaint, or proffer the language of the allegedly breached contractual provision, then he fails to state a breach of contract claim.  *See Northampton Restaurant Group, Inc. v. FirstMerit Bank, N.A.*, 492 F.App'x 518, 521-22 (6th Cir. 2012) (dismissal of breach of contract claim on 12(b)(6) grounds affirmed where plaintiff did not attach the contract or describe the contract's provisions); *Shane v. Bunzl Distrib. USA, Inc.,* 200 F.App'x 397, 401–02 (6th Cir.2006) (dismissal of breach

of contract claim affirmed because plaintiff did not allege the existence of any contractual term defendant allegedly breached).

Barbourville Diagnostic accuses Philips Medical of breaching written and oral contracts, but besides setting forth conclusory allegations it neither lists nor describes any provisions of these so-called contracts that have been breached. As demonstrated by case law, failing to proffer the contract or to disclose its terms is grounds for dismissal. Nevertheless, Barbourville Diagnostic's account of each contractual agreement suggests that they do exist, but that it simply failed to include the requisite information in its Amended Complaint. Thus, dismissal of the contract claims is improper and Barbourville Diagnostic will be given an opportunity to include evidence of these agreements in the record.

### 2

Barbourville Diagnostics claims for negligent hiring, negligent repair, and negligent misrepresentation suffer a different fate. In *Giddings and Lewis Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729 (Ky. 2011), the Kentucky Supreme Court adopted the economic loss rule as set forth in *East River Steamship Corp. v. Transamerica Deleval, Inc.*, 476 U.S. 858, 866 (1986). The *Giddings* court held that " 'a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself.' " 348 S.W.3d at 738 (quoting *East River Steamship*, 476 U.S. at 871). The court further opined that the "rule recognizes that economic losses, in essence, deprive the purchaser of the benefit of his bargain and that such losses are best addressed by the parties' contract and relevant provisions of Article 2 of the Uniform Commercial Code." *Id.* (internal citation omitted). In its view, "costs for repair or replacement of the product itself, lost profits and similar economic losses

8

cannot be recovered pursuant to negligence or strict liability theories but are recoverable only under the parties' contract, including any express or implied warranties." *Id.*

This principal was recently reaffirmed by the Kentucky Court of Appeals in *Cincinnati Ins. Companies v. Staggs & Fisher Consulting Engineers, Inc.*, 2013 WL 1003543 (Ky. App. March 15, 2013). There, the appeals court explained that "[t]he economic loss rule prevents a commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, limiting the recovery of such damages, if at all, to contract law." *Id.* at 2. To put it more plainly, the *Staggs* court concluded that " the rule prohibits purchasers of products from recovering purely economic damages under most tort theories." *Id.*

Applying the economic loss doctrine to this matter effectively forecloses Barbourville Diagnostics' right to proceed with their negligence theories. It seeks "[d]amages for breach of contract," "past and future loss of reputation and goodwill," "business relationships and lost business opportunities," "past and future lost income," "permanent reduction of earning capacity," and "incidental and consequential damages and expenses." [R. 5-1, at 5.] These are all economic in nature, and thus any claims for negligence are misguided. *See Giddings*, 348 S.W.3d at 739 ("[i]n this case, all or virtually all of the damages which Industrial Risk Insurers seeks to recover are economic losses, i.e., repair/replacement costs for the Diffuser Cell System, costs associated with Ingersoll Rand's contracting work to outside companies, in-house overtime and other miscellaneous costs.") Therefore, Barbourville Diagnostics claims based on negligence will be dismissed.

**III**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

9

    (1)      Barbourville Diagnostics Motion for Leave to File Amended Complaint [R. 5] is **GRANTED**

    (2)      Barbourville Diagnostics' Amended Motion for Leave to File Amended Complaint [R. 10] is **DENIED as moot**;

    (3)      Philips Medical's Motion to Dismiss [R. 4] is **GRANTED in part and DENIED in part**;

    (4)      The claims for Negligent Repair, Negligent Hiring, Negligent Misrepresentation, and the General Claim are **DISMISSED with prejudice**; and

    (5)      Philips Medical is **DIRECTED** to file in the record by Monday, August 19, 2013, evidence of the contractual agreements between it and Barbourville Diagnostic.

    This 16th day of August, 2013.

**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**

10