UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| BARBOURVILLE DIAGNOSTIC IMAGING CENTER, | ) ) ) ) ) ) ) ) ) ) ) ) | Civil No. 12-191-GFVT  **MEMORANDUM OPINION & ORDER** |
| Plaintiff, | | |
| V. | | |
| PHILIPS MEDICAL SYSTEMS, INC., | | |
| Defendant. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Barbourville Diagnostic Imaging Center purchased a magnetic resonance imaging scanner from Philips Medical Systems, Inc., in August of 2001. Seven years later, the scanner began malfunctioning, rendering incorrect diagnostic images because of a defective part. After dealing with the malfunctioning MRI equipment for roughly two years, Barbourville Diagnostic decided to file suit against Philips Medical. The suit was initially filed in Knox County Circuit Court, but it was removed to this Court. Barbourville now sues Philips for breach of contract.[1] [R. 17.] Philips has asserted counterclaims for both breach of contract and unjust enrichment. [R. 21.]

**I**

The present motion for summary judgment relates specifically to service agreements that the parties entered into in 2009 and 2010. The first service agreement was executed on July 13, 2009 and the second agreement was executed on July 26, 2010.

---

[1] Barbourville also originally sued for negligent repair, hiring and misrepresentation but these claims were dismissed by this Court on August 16, 2013. [R. 16.]

[*See* R. 35-2; R. 35-3.] According to Philips, the second agreement was a more expensive maintenance plan and had the effect of superseding the first agreement. [R. 35-1 at 4.] The agreements between Philips and Barbourville contain two separate places for the parties to sign. [R. 35-3.] The first set of signature lines is on page two and the second set is on the bottom of page four. [R. 35-3 at 2, 4.] The parties signed the agreement on page two but left page four blank. Inches above the second signature block on page four is Section nine of the Agreement, titled "Limitations of Remedies and Damages." [R. 35-3 at 4.] That provision provides:

> Philips' total liability, if any, and Customer's exclusive remedy with respect to the Services and Philips' performance hereunder is limited to an amount not to exceed the price stated herein for service that is the basis for the claim. IN NO EVENT WILL PHILIPS BE LIABLE FOR ANY INDIRECT, PUNITIVE, INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES, INCLUDING WITHOUT LIMITATION, LOST REVENUES OR PROFITS, OR THE COST OF SUBSTITUTE PARTS OR SERVICES, WHETHER ARISING FROM BREACH OF THE TERMS IN THIS AGREEMENT, BREACH OF WARRANTY, NEGLIGENCE, INDEMNITY, STRICT LIABILITY OR OTHER TORT. PHILIPS WILL HAVE NO LIABILITY FOR ANY ASSISTANCE PHILIPS PROVIDES THAT IS NOT REQUIRED UNDER THIS AGREEMENT.

[R. 35-3 at 4 (emphasis in original).] The parties' central dispute does not relate to the meaning of this provision or its effect if it is determined that the provision does apply. The parties' disagreement is more fundamental. They disagree about whether this paragraph is to be given any effect at all since the signature line on page four, inches below the provision limiting damages, is blank.

Barbourville argues that page four is unsigned because the parties did not agree to it. They argue the limitations do not apply and that they are entitled to recover over $4.7

million dollars.² Philips argues that the parties intended to limit damages and that there is no legal requirement that the signature appear at the end of the agreement. Therefore, it argues that that the provision does apply and that damages are limited to a much-lesser, contractually-specified amount of $249,300.³ As a result of this disagreement, the parties' case valuations differ by $4,485,200. [R. 35-1 at 1.] Both parties agree that New York law is to be applied in resolving this dispute.

The issues being fully briefed, the Court now turns to the presently pending motion for partial summary judgment which asks the Court for a ruling on whether Section nine, the provision limiting remedies and damages, is to be given effect. For the following reasons, the Defendant's motion will be **GRANTED** and Section nine of the agreement does apply.

## II

### A

Rule 56 provides that a party may move for summary judgment on either an entire claim or defense or a "part of each claim or defense." Fed. R. Civ. P. 56. Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file,

---

² Philips asserts that no evidence has been produced to support such a recovery. [R. 35-1 at 9.] This issue is not relevant to the Court's present determination.

³ Barbourville argues that even if the Court decides that the contractual limitation on liability does apply, the cap is not $249,300 but, rather, $315,800.04. [R. 37-1 at 2.] This larger number includes $66,500.04 for a breach allegedly occurring while the 2009 agreement was in force and an additional $249,300 under the 2010 agreement. [*Id*.] Philips disagrees, arguing that language in Section nine of the agreement ("Philips' performance hereunder is limited to an amount not to exceed the price stated herein") limits damages to $249,300. [R. 38 at 1.] Because this issue is ancillary and the briefing is fairly summary on this point, the Court does not address it except to say that because the pertinent language and form used in the two agreements is so similar (where not identical), the Court's analysis of the 2010 agreement also applies to the 2009 agreement-- if it is determined that the 2010 agreement does not subsume its predecessor.

and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.' " *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

In deciding a motion for summary judgment, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324.) Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Id*. (internal citations omitted).

The trial court is under no duty to "search the entire record to establish that it is

4

bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d at 655.

**B**

Barbourville argues that New York law requires "incorporation by reference" language accompany a signature if language following that signature is to be given effect. [R. 37-1 at 3.] In this case, they contend that the language in the signature box on page two is "insufficiently clear" to effectively incorporate pages three through six by reference because it is ambiguous and must be interpreted against the defendant. [R. 37-1 at 4.] The effect, they suggest, is that only pages one and two of the agreement should be given any effect.

In support of their proposition that New York law requires "incorporation by reference" language, Barbourville cites to *Winter Brothers Recycling Corporation v. Barry Imports East Corporation*, 23 Misc. 3d 1115(A), 885 N.Y.S.2d 714 (Dist. Ct. 2009). That case states that "the failure to provide a first page incorporating reference as to additional terms and conditions provided on a separate page, vitiates all representations after the signature page." *Id*. (citations omitted). This begs the question – is the language located above the signature block sufficient to qualify as an "incorporating reference?"

Philips argues that the language located immediately above the signatures on page two of the agreement is sufficient. The language states:

> Upon customer signing and acceptance by an authorized Philips representative in Bothell Washington, this document constitutes a contract and customer agrees to be bound by all the terms hereof, which include IMPORTANT LIMITATIONS OF LIABILITY.

[R. 35-3 at 2 (emphasis in original).] There is no more mention made of liability on pages one and two of the agreement and Section nine, on page four of the agreement, is the only provision in the entire agreement addressing "IMPORTANT LIMITATIONS OF LIABILITY." [*See* R. 35-3.]

Having considered the issue, the Court believes that the language included before the signature block on page two is sufficient to incorporate the remainder of the agreement following the signature. In *Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404, 920 N.E.2d 359 (2009), the Court of Appeals of New York considered whether language in a sunset provision applied only to the sections preceding it or also to the provisions following it. The Court concluded that:

> the phrase "[t]he agreements contained herein" unambiguously encompasses all of the obligations in the contract as it is accompanied by no limiting language suggesting that it refers to only some of the obligations, such as those in the preceding paragraphs…

*Id.* In the case at hand, the language on page two of the agreement, immediately above the customer signature line, states that the "customer agrees to be bound by **all the terms hereof**, which include **IMPORTANT LIMITATIONS OF LIABILITY**." [R. 35-3 (emphasis added).] Similarly, immediately above Philip's signature line it says, "Philips by its acceptance hereof, agrees to provide maintenance services for the equipment listed above in accordance **with the following terms**." [*Id.* (emphasis added).] If anything, this language is clearer than the language in *Riverside*. First, the references to "all the

terms hereof" and "in accordance with the following terms" must be referring to the "Service Agreement Terms and Conditions" which begin on page three of the agreement because there are no other "terms" to which it could be referring. Second, no mention is made anywhere on page one or two to limitations of liability. Rather, the only provision in the contract titled "IMPORTANT LIMITATIONS OF LIABILITY" is the contested Section on page four of the agreement.

General principles of interpretation also support this construction. When interpreting a contract, "the document must be read as a whole to determine the parties' purpose and intent, giving a practical interpretation to the language employed so that the parties' reasonable expectations are realized." *Snug Harbor Sq. Venture v. Never Home Laundry,* 252 A.D.2d at 521, 675 N.Y.S.2d 365; s*ee also Yonkers Contracting Co. v. Romano Enterprises of New York, Inc.*, 40 A.D.3d 629, 629, 835 N.Y.S.2d 363, 364-65 (App. Div. 2007) ("[T]he court should arrive at a construction which will give fair meaning to all of the language employed by the parties, to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized.") (*citing Matter of John E. Andrus Mem. Home v. DeBuono,* 260 A.D.2d 635, 636, 688 N.Y.S.2d 687). Furthermore, "a court should not adopt an interpretation which would leave any provision without force and effect." *Snug Harbor*, 252 A.D.2d at 521 (*citing Sunrise Mall Assocs. v. Import Alley of Sunrise Mall,* 211 A.D.2d 711, 621 N.Y.S.2d 662).

Notably, the agreement's pagination suggests that Barbourville knew they were agreeing to all six pages of the agreement. Each page contains the page number in in the

bottom right hand corner in the following format: "Page 1 of 6," "Page 2 of 6," etc. The signature page is clearly stamped "Page 2 of 6," suggesting that four additional pages follow. Had Barbourville not wanted to agree to pages three through six they could have easily marked across the pages or made their intention clearly known. Quite to the contrary, Barbourville's arguments appear to depend on select other provisions contained in these pages, at least when they are beneficial to Barbourville.

Philips identifies two ways in which Barbourville depends on provisions located on these allegedly worthless pages. First, Barbourville's only remaining claim in this matter alleges that Philips breached the written contract between the parties. [*See* R. 17 at 2-3.] The written provisions that obligate Philips to maintain Barbourville's MRI machine are all located on pages three through six of the agreement. Second, Barbourville must also consider Section 17, which is located on page four of the agreement and establishes that the case is to be governed by New York law, to have some effect because they argue this case under New York law.

While it certainly would have been clearer if the parties signed page four, the parties' failure to sign that page was more likely an oversight than an intentional renunciation of those terms. This conclusion is supported by common sense, case law, and general principles of construction and interpretation.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that the Defendant's Motion for Partial Summary Judgment [R. 35] is **GRANTED**. Section nine of the parties' agreement entitled "IMPORTANT LIMITATIONS OF

LIABILITY" is part of the agreement and shall be given effect. The parties are **FURTHER ORDERED** to submit an amended scheduling Order to govern future proceedings within 21 days.

This 20th day of January, 2015.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge